**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 14a0360n.06**

Case No. 12-6311

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

May 09, 2014
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| BILLY W. MILLER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF TENNESSEE |
| D R U G   E N F O R C E M E N T | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant-Appellee. | | |

Before:        COLE and SUTTON, Circuit Judges; and CLELAND, District Judge.[*]

CLELAND, District Judge.   Plaintiff Billy W. Miller seeks to set aside the completed

forfeiture of $182,064.35 in funds seized by Defendant Drug Enforcement Administration ("DEA").

The relevant statute precludes relief where the claimant has actual notice of the seizure.  Because

Plaintiff asserted facts in his pleadings revealing actual notice, the district court did not err in finding

that he in fact had notice of the seizure.  We **AFFIRM** the judgment of the district court in all

respects.

---

[*] The Honorable Robert H. Cleland, United States District Judge for the Eastern District of
Michigan, sitting by designation.

## I. BACKGROUND[1]

On or about April 20, 2007, officers with the Jackson, Tennessee Police Department commenced investigation of a theft of property from the Jackson Wellness Clinic. Sergeant Marla Taylor, who was assigned to the case, took a report from the victim, the Plaintiff in this case. He advised that a black Tournamax bag had been stolen. According to Miller, the bag contained a large amount of cash, antique jewelry and coins, and credit cards. He identified the thieves as Bethany April Thompson and Claude Allen Wells. (Page ID 134.)

Five days after the theft, Thompson and Wells were arrested in Oceanside, California and the currency in their possession was seized. Over the next couple of days, Officer Taylor learned in a series of phone calls with Detective Brian Bruce of the Oceanside Police Department that Bruce planned to seize the money as drug proceeds. On May 7, 2007, the DEA office in San Diego, California adopted the seizure and subsequently submitted a report to the office of DEA's Forfeiture Counsel, which accepted the case for administrative forfeiture. (*Id.*)

Within a few days of the arrest, Miller asked Taylor when his funds would be returned. She passed on to him the information received from Bruce and advised Miller thusly: "[W]e would have to wait. At this point in time it was, you know, evidence either of the crime committed here in Jackson or the crime that occurred in California. That they would retain that evidence, and at some point we would find out the disposition." Taylor was informed by Bruce that the DEA would attempt to seize the moneys, which would be shared with Oceanside. According to Taylor, final word from

---

[1] Both parties relied on the district court's well-stated facts, and we adopt them verbatim as well.

Bruce that DEA would make a seizure of the funds was received by her and transmitted to Miller within a month of the initial incident report. The report, which contained Plaintiff's personal contact information, was provided to the authorities in Oceanside. With respect to the seizure, Taylor advised Miller that "whatever arrangements there were to be made would be made between him and the DEA in California."  (*Id.* at Page ID 135.)

Miller spoke to Bruce directly by telephone. The Plaintiff testified at trial that the detective called him to advise that the money had been located and that he was working on getting it returned as soon as some paperwork was completed. He could not remember exactly when the conversation occurred. Miller related that Bruce made no mention of a forfeiture proceeding and he was not made aware of it until he was informed later by Sergeant Taylor. He recalled that she told him he would get something from DEA and would have to sign for it, but nothing ever came.  (*Id.*)

On May 31, 2007, DEA sent written notice of the seizure by certified mail, return receipt requested, to Thompson at Post Office Box 11431, Jackson, Tennessee 38308-0123. The United States Postal Service returned the notice stamped "Return to Sender – Unclaimed" on June 18, 2007. DEA also sent written notice of the seizure to Thompson by certified mail, return receipt requested, at the Vista Detention Facility, 325 South Melrose Drive, Vista, California 92083-6696 on May 31, 2007. On June 5, 2007, an individual accepted delivery of the notice. Notice of seizure was published in the Wall Street Journal, a newspaper of general circulation in the Southern District of California and the Western District of Tennessee, once a week for three successive Mondays: June 11, 18, and 25, 2007. On July 5, 2007, DEA sent written notice by certified mail, return receipt

requested, to Wells at George Bailey Detention Facility, 446 Alta Road, Suite 5300, San Diego, California 92158-0002. Delivery was accepted on July 9, 2007. (*Id*.)

The published and mailed notices explained the option of filing a claim with the DEA Forfeiture Counsel in order to contest the forfeiture action in the United States District Court. They advised that the deadline for filing a claim was August 9, 2007 or, if the mailed notice was not received, July 26, 2007. The published notices also provided information concerning the option of filing a petition for remission or mitigation of forfeiture. It is undisputed that no written notice of the seizure was mailed to the Plaintiff. On August 21, 2007, after no properly executed claim for the funds had been received, and after the time for filing a claim had expired, DEA declared the property administratively forfeited pursuant to 19 U.S.C. §1609. (*Id*. at Page ID 136.)

## II. STANDARD OF REVIEW

We review the district court's factual findings for clear error, and its conclusions of law de novo. *See United States v. $677,660.00 in U.S. Currency,* 513 F. App'x 531, 532, (6th Cir. 2013); *United States v. Howell*, 425 F.3d 971, 973 (11th Cir. 2005).

## III. ANALYSIS

### A.    18 U.S.C. § 983(e)

Plaintiff initiated this action under 18 U.S.C. § 983(e), which is "the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute." 18 U.S.C. § 983(e)(5). The statute provides:

> (1) Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file

4

a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if--

> (A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and

> (B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

*Id.* § 983(e). The statute thus provides that Plaintiff's motion fails if *either* the Government did not take reasonable steps to provide him with notice, despite knowing of his interest *or* Plaintiff knew or should have known of the seizure within sufficient time to file a timely claim. Here, the district court correctly found that Plaintiff, by his own admissions, had actual notice of the seizure of the subject funds, which precludes any right to relief under § 983(e).

There is no reasonable dispute here that Plaintiff had actual notice of the seizure. Although he testified at trial that he did not know of the possibility of seizure, the complaint indicates to the contrary. (Page ID 7-8.) As the district court held, Plaintiff is bound by the factual allegations in the complaint. *See Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 549 (6th Cir. 2000). Moreover, trial testimony of Sergeant Taylor corroborated Plaintiff's initial factual allegations that he was notified that the currency was being seized as drug proceeds by May 2007, after the DEA adopted the seizure and began the administrative forfeiture process. The district court's findings to this end were not clearly erroneous but were, instead, abundantly supported by the record. As the claim deadline was July 26, 2007, Plaintiff knew or had reason to know "of the seizure within sufficient time to file a

timely claim." 18 U.S.C. § 983(e)(1)(B).[2] The district court correctly denied his motion on this basis.

### B. Due Process

Plaintiff devotes the bulk of his appeal to arguing that publication of the seizure in the Wall Street Journal was insufficient under the facts of this case to satisfy the Due Process Clause of the United States Constitution. Having found Plaintiff does not have a remedy under § 983(e), to accept Plaintiff's argument we would have to find he has an independent and alternative entitlement to relief under the Due Process clause. It might be an interesting academic exercise to think about how this argument squares with the language in § 983(e)(5) (providing the exclusive remedy for setting aside a declaration of forfeiture). But that exercise would be futile. Plaintiff did not bring a Due Process claim, but only a claim under § 983(e). Plaintiff did not seek to amend his complaint, nor was there any mention of Due Process in the final pretrial order. Rather, on the day of trial, Plaintiff attempted to inject a Due Process clause claim. That avenue of complaint amendment –or claim insertion– was not open to him under any reading of Federal Rule of Civil Procedure 15. No Due Process claim is properly presented.

### IV. CONCLUSION

We AFFIRM.

---

[2]Under the plain language of the statute, it is irrelevant whether Plaintiff had actual notice of the *forfeiture proceedings*, and his attempt to so argue is misguided. It is only notice of the seizure that is controlling.